**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Ruel Antonio WALLACE,**
**Defendant–Appellee.**

No. 99–50567.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2000.

Filed June 9, 2000.

As Amended July 7, 2000.

David P. Curnow, Assistant United States Attorney, San Diego, California, for the plaintiff-appellant.

Todd W. Burns and Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellee.

Before: FERNANDEZ, TASHIMA and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Mistakenly believing that *any* tinting of a vehicle's front windows was illegal, a police officer conducted a traffic stop of the defendant's car. The tinting *was* illegal but for a different reason—because it was over twice as dark as the law allows. Although the officer misunderstood the tinting law, he was correct that the tinting he saw was illegal, and accordingly, had probable cause to stop the car. Since the stop was lawful, the results of the subsequent consent search should not have been suppressed. We reverse.

## I.

In April of 1999, agents of the Drug Enforcement Agency were conducting surveillance of a white Ford Expedition driven by defendant Ruel Wallace. Suspecting that Wallace's vehicle carried marijuana, the agents radioed San Diego Police Officer Lawrence Leiber, and requested that he conduct a pretextual traffic stop. The DEA agents suggested that Leiber pull the vehicle over for failing to display valid license plates, but there was a problem with that suggestion: the vehicle had valid plates.

Leiber parked at a gas station where he could view Wallace's vehicle as it passed him by. As Wallace executed a left turn, Leiber noticed that the vehicle's passenger-side front and rear windows were tinted. Leiber then followed the Expedition for approximately one-quarter of a mile; as he approached the vehicle from alongside, he observed that all of the driver-side windows were tinted.

Upon making these observations, Leiber pulled Wallace's vehicle over. Wallace consented to its search. Ten boxes containing a total of 130 pounds of marijuana were found. Using that information, officers obtained a search warrant for a residence where they found another 544 pounds of marijuana. Wallace subsequently was charged with conspiracy to possess and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Wallace moved to suppress the evidence found in his car and the residence, arguing that Leiber lacked probable cause to stop the vehicle in the first place and that the subsequent seizure of evidence was the fruit of the unlawful stop. At the suppression hearing, Leiber testified that the Expedition's windows were tinted enough to make it "difficult" to view the occupants inside. Leiber also testified that he had received and read a flier published by the San Diego Police Departments's Traffic Division that stated that the California Vehicle Code prohibits *any* tinting of a vehicle's front side windows. Leiber testified that he had assumed that the flier correctly stated the law when he made the stop.

The flier was wrong. California law allows tinting of the windshield and front driver- and passenger-side windows so long as the coloring permits a light transmittance of at least 70 percent. *See* Cal. Vehicle Code § 26708(d).[1]

The district court granted the defendant's motion to suppress. The court re-

---

1. Section 26708(d) of the California Vehicle Code states in pertinent part:

   [A] clear, colorless, and transparent material may be installed, affixed, or applied to the front side windows, located to the immediate left and right of the front seat if the following conditions are met

   . . . .

   (2) The window glazing with the material applied meets all requirements of Federal Motor Vehicle Safety Standard No. 205 (49 C.F.R. 571.205), including the specified minimum light transmittance of 70 percent and the abrasion resistance of AS–14 glazing, as specified in that federal standard. *Id.*

lied on *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), which held that law enforcement agents conducting pretextual traffic stops must have probable cause to believe that a traffic violation occurred in order to detain a vehicle. The court concluded that Leiber lacked the probable cause necessary to support the pretextual traffic stop of the Expedition because Leiber had no "objectively grounded" legal justification for the stop. The district court reasoned:

> [T]he fact that this case involves a pretextual stop combined with Officer Leiber's (1) repeated misstatement of the applicable law regarding window tinting, (2) failure to even mention the 70 percent requirement, and (3) failure to explain why the Expedition's windows were illegally, rather than legally, tinted, leads the Court to find that Officer Leiber did not have probable cause to believe that a traffic violation had occurred.

The government filed a motion for reconsideration accompanied by the declarations of California Highway Patrol Officer Mark Crofton. An expert on window tinting, Crofton stated that his examination of the windows in Wallace's vehicle revealed that they allowed a light transmittance of only 29%, over twice as dark as is legal in California.

In denying the government's motion for reconsideration, the district court stated:

> Although Officer Crofton's observations and tests are interesting, the Government misses the point that an after-the-fact declaration and test from an officer who was not present on the day of the traffic stop has no bearing on the Court's evaluation. The issue in this case is whether the officer who actually made the stop, i.e. Officer Leiber, had "probable cause to believe that a traffic violation [had] occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

The government appealed.

## II.

Wallace first argues that we lack jurisdiction to consider the government's interlocutory appeal because, he alleges, the U.S. Attorney failed to strictly comply with the certification requirement of 18 U.S.C. § 3731. That statute allows the government to appeal an order suppressing evidence if the "United States Attorney certifies … that the appeal is not taken for the purpose of delay and that the evidence is substantial proof of a fact material in the proceeding." *Id.* Wallace contends that the government's § 3731 certification in this case is invalid because it bears the signature of First Assistant United States Attorney Patrick K. O'Toole, not that of *the* United States Attorney, Gregory A. Vega.

This argument fails because 28 C.F.R. § 0.131 allows a United States Attorney to designate an assistant U.S. Attorney to carry out his functions during his absence. It provides:

> Each U.S. Attorney is authorized to designate any Assistant U.S. Attorney in his office to perform the functions and duties of the U.S. Attorney during his absence from office, or with respect to any matter from which he has recused himself, and to sign all necessary documents and papers, including indictments, as Acting U.S. Attorney while performing such functions and duties.

*Id.*

■ The other circuits that have considered the question have upheld delegations under this regulation. *United States v. Smith*, 532 F.2d 158, 160 (10th Cir.1976); *United States v. Wolk*, 466 F.2d 1143, 1146 n. 2 (8th Cir.1972). We agree with them. Life doesn't stop just because the United States Attorney is absent from office. The regulation sensibly makes provision for the United States Attorney to designate assistants to act in his stead when necessary.

But that is not the end of the problem. The sufficiency of the certification was raised for the first time in Wallace's brief filed on December 6, 1999. In reply to

that brief, the government furnished the affidavit of Patrick O'Toole dated December 16, 1999, stating that he signed the § 3731 certification because

> [a]t the time the certification was presented for signature, Mr. Vega was out of the United States Attorney's Office on business. Therefore, under the terms of Gen. Policy 99–02, I signed as "Acting United States Attorney" the original affidavit attached to the Notice of Appeal filed in the above-entitled case certifying compliance with 18 U.S.C. § 3731.

O'Toole also furnished a copy of a Memorandum dated May 6, 1999 from U.S. Attorney Gregory A. Vega to "All Personnel" designating, pursuant to 28 C.F.R. § 0.131, O'Toole and five other of his assistants to act in his absence in the order listed in the memo.[2]

■ Because the certificate was not signed by the United States Attorney himself, it should have been accompanied by the documents establishing O'Toole's authority to sign. It is hoped that government counsel will follow this procedure in the future. The bottom line, however, is that the § 3731 certificate was timely filed; only the proof of O'Toole's authority to act in place of Vega was furnished belatedly. If, as we have held, the late filing of a § 3731 certificate itself does not automatically invalidate it, *see United States v. Gantt,* 194 F.3d 987, 997 (9th Cir.1999), then it follows that neither does the tardy

filing of documents establishing the authority of the signer. *See United States v. Becker,* 929 F.2d 442 (9th Cir.1991); *United States v. Eccles,* 850 F.2d 1357, 1359–60 (9th Cir.1988). O'Toole's affidavit and Vega's memo clearly establish that O'Toole had been delegated the authority to act in place of Vega on September 2, 1999, the date on which the § 3731 certificate and notice of appeal were filed. Accordingly, the government's appeal is properly before us.

### III.

■ We review de novo the lawfulness of a search or seizure, and we review for clear error the district court's underlying findings of fact. *See United States v. Hudson,* 100 F.3d 1409, 1414 (9th Cir. 1996).

In *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), a case involving a pretextual traffic stop, the U.S. Supreme Court held that the constitutionality of a traffic stop does not depend on the subjective motivation or intent of the officers. *Id.* at 813, 116 S.Ct. 1769. "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810, 116 S.Ct. 1769. The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop.[3]

---

**2.** The memo stated in pertinent part:

> Pursuant to 28 C.F.R. § 0.131, I hereby designate the following Assistant U.S. Attorneys to perform the functions and duties of the U.S. Attorney during my absence from the office, and to sign all necessary documents and papers, including indictments, as Acting U.S. Attorney while performing such functions and duties. The first listed Assistant U.S. Attorney in the order below who is present in the office is the designated Acting U.S. Attorney in my absence on all criminal cases and investigations:
>
> Patrick O'Toole, First Assistant U.S. Attorney
> William Q. Hayes, Chief, Criminal Division
> Carol C. Lam, Chief, Major Frauds and Economic Crimes Section

> . . . .
> The above designations may be superseded by a memorandum from me designating a person to act in my stead during a particular absence.

**3.** The government argues that reasonable suspicion is sufficient to support a pretextual traffic stop. The defendant disagrees with this contention; moreover, he argues that the government failed to raise the issue below, and thus has waived the issue on appeal. *See United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir.1991) ("Issues not presented to the trial court cannot generally be raised for the first time on appeal.").

> There is no need for us to address the parties' contentions with respect to this matter, however, as we find that the stop in this case was supported by probable cause.

■ Probable cause exists "when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir.1985). The concept of probable cause is a "fluid" one—it depends on an "assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

At the hearing on the motion to suppress, Officer Leiber testified as follows

MR. MILLER: And, at the time that you observed the tinting on the driver's side and the passenger's side window of the Expedition, did you believe that to be a violation of a California Vehicle Code Section?

MR. COLEMAN: Objection, relevance

THE COURT: Overruled.

OFFICER LEIBER: Yes, I did.

MR. MILLER: Why?

MR. COLEMAN: Objection, relevance.

THE COURT: Overruled

OFFICER LEIBER: The window tinting on the front two windows, even during the daylight hours, was a heavy tint where the occupant inside was at a harder degree to look [sic] into the vehicle

■ This is significant because the first declaration of Mark Crofton, the expert on window tinting, established that "The 70% light transmittance addressed in [Section 26708(d)(2) of the California Vehicle Code] would still provide a *clear, unobstructed view* of the driver's compartment of the vehicle." (Emphasis added). In other words, the fact that Leiber observed a "heavy tint" and that "the occupant inside was at a harder degree to look into the vehicle" establishes that the tinting on Wallace's windows probably allowed less than 70% light transmittance, which in turn establishes probable cause to believe that the vehicle was in violation of California law. As the California Court of Appeal aptly put it in *People v. Niebauer*, 214 Cal.App.3d 1278, 263 Cal.Rptr. 287 (1989):

We don't call upon the officers to be scientists or carry around and use burdensome equipment to measure light transmittance, nor do we expect them to discuss the sufficiency or insufficiency of the light transmittance as if they were an expert witness on the subject.

Rather ... [i]f an officer forms an opinion in a common sense examination of a vehicle that ... light is obstructed in the fashion contemplated by the statute, such evidence will be sufficient to support conviction ... if the trial court believes the officer....

*Id.* at 1292, 263 Cal.Rptr. 287.

That Leiber had the mistaken impression that all front-window tint is illegal is beside the point. Leiber was not taking the bar exam. The issue is not how well Leiber understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation. The undisputed facts show that he did. Although not essential to the probable cause analysis, the subsequent measurement of the level of light transmittance at 29% corroborates Leiber's observations. This is analogous to the case of an officer finding in someone's pocket a baggie containing a green leafy substance and rolling papers; there is probable cause to believe that the substance is marijuana even though it will not be known for certain until the laboratory report is received. In our case, Officer Leiber's observations correctly caused him to believe that Wallace's window tinting was illegal; he was just wrong about exactly why.

The circumstances here stand in sharp contrast to cases in which the defendant's conduct does not in any way, shape or form constitute a crime. For example, in *United States v. Miller*, 146 F.3d 274 (5th Cir.1998), an officer pulled a driver over

for leaving his turn signal on without turning. Since leaving a turn signal on without turning does not violate Texas law, the officer did not have objective probable cause to believe that a crime was committed. *See id.* at 280. *See also United States v. Lopez–Soto,* 205 F.3d at 1106 (invalidating a traffic stop for failure to display registration sticker in rear window because this alleged infraction was not actually a violation of the Baja California vehicle code); *United States v. Lopez–Valdez,* 178 F.3d 282, 288–89 (5th Cir.1999) (traffic stop for displaying cracked taillight invalid because displaying a cracked taillight was not an infraction).

Unlike non-stop turn signals in Texas, overly-tinted windows in California *are* illegal. And as the undisputed facts demonstrate, Officer Leiber had objective, probable cause to believe that Wallace's windows did not pass muster. The traffic stop, therefore, was not unlawful, and neither was the subsequent search and seizure. The motion to suppress should have been denied.

REVERSED AND REMANDED.