Filed 3/21/13  P. v. Collins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCIS RONALD COLLINS,<br><br>    Defendant and Appellant. | D061970<br><br><br><br>(Super. Ct. No. JCF25089) |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher W. Yeager; Raymundo A. Cota, Judges.  Affirmed as modified.

Francis Collins appeals from a judgment convicting him of transportation of methamphetamine and related offenses.  He argues the judgment must be reversed because the trial court erred in denying his suppression motion.  We find no error in this ruling.

Collins also argues weight enhancements attached to his offenses must be reversed because he was charged and convicted under the wrong subdivision of the Health and Safety Code weight enhancement provision.  We conclude this was a clerical or technical

error that did not violate his due process right to notice of the charges against him, and we modify the judgment to correct the mistaken subdivision citation.

As to his sentence, Collins asserts, and the Attorney General concedes, that the court erred in failing to stay the sentences on all but the principal count (count 3) under Penal Code section 654. We agree and modify the judgment to stay the sentences on counts 1, 2, and 4.

As so modified, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

While driving on the highway on the night of March 12, 2010, Officer Robert Gonzalez pulled over a BMW vehicle being driven by Collins because the car had darkly tinted windows. Officer Gonzalez advised Collins that he was being stopped for the tinted windows; asked for his driver's license, registration, and proof of insurance; and made general inquiries about the car. During their interaction, Officer Gonzalez noticed several unusual aspects of Collins's behavior, including his hand was trembling when he handed his license to the officer; he was "overly friendly"; and he could not remember the name nor provide other details about the auto repair shop in Calexico where he said he had just taken the BMW. When Officer Gonzalez asked him if he had any drugs in the car, Collins looked startled, broke eye contact and stopped looking at Gonzalez, and said, "oh, no."

After determining that Collins's license was suspended, Officer Gonzalez informed Collins that his vehicle would be impounded. Collins pleaded with him "to cut him a break and not impound the vehicle." During an ensuing conversation, Collins said he

2

was returning from Mexicali, whereas he had earlier said he was returning from Calexico. Based on Collins's nervousness and the totality of circumstances, Officer Gonzalez suspected there was some kind of illegal activity occurring with the vehicle. He retrieved his police dog from his patrol unit to sniff the BMW, and the dog alerted him to several areas of potential drug presence. When Officer Gonzalez unfastened the base of the back seat and pulled up the cushion, he noticed smudges in an area that suggested someone had accessed the gas tank where drugs could be hidden.

When the vehicle was subsequently towed and searched in full, the authorities found a total of 26.7 pounds (12.114 kilograms) of methamphetamine in packages hidden in the car. During an interview with a Narcotics Task Force agent, Collins admitted that he had been hired to drive the vehicle containing the narcotics across the border and then to a casino.

Collins was charged and convicted of possession of methamphetamine for sale (count 1), conspiracy to possess methamphetamine for sale (count 2), transportation of methamphetamine (count 3), and conspiracy to transport methamphetamine (count 4). The jury also found true weight enhancements (more than 10 kilograms) for each count. Collins admitted allegations of a prior drug-related conviction.

The trial court sentenced Collins to a 16-year term. The court selected count 3 (transportation of methamphetamine) as the principal term, and imposed a three-year sentence on this count, plus 10 years for the weight enhancement and three years for the prior conviction. The sentences on the remaining counts were ordered to be served concurrently.

3

DISCUSSION

I. *Denial of Suppression Motion*

Collins argues the trial court erred in denying his motion to suppress the narcotics found in the vehicle based on his claim that the officer lacked a reasonable suspicion to stop the vehicle.

*Background*

In his pretrial suppression motion, Collins argued Officer Gonzalez did not have a sufficient basis to believe he had violated the laws regarding tinted windows, and hence there was no reasonable suspicion for the stop.

At the hearing on the suppression motion, Officer Gonzales testified he has been a California Highway Patrol officer for 12 years, and has conducted about 1,000 traffic stops for illegally tinted windows. At about 9:30 p.m., he stopped the BMW being driven by Collins because he assessed that it had illegally tinted windows. He made this determination as he was driving in the slow lane next to the BMW in the fast lane, and when his driver's window was aligned with the BMW's passenger window. He noticed the BMW had an "extremely dark tint" on the windows.

Officer Gonzalez stated that window tint is rated by the percentage of light that can go through the window; the legal percent of window tinting in California is 70 percent; and he estimated the BMW's tint allowed in only about 20 percent light. Officer Gonzalez elaborated that at 70 percent the window is "pretty much clear," and a person can "see through both windows all the way through"; can see the driver's face; and can see objects inside the vehicle. The BMW's tint was "extremely dark to the point where

4

[he was not] able to see inside the vehicle at all." He opined that the tint prevented Collins from seeing outside of the car "clearly the way windows were intended."

On cross-examination, Officer Gonzalez acknowledged that it was dark outside when he was driving next to Collins on the highway; he was driving 65 miles per hour; and he was alongside the BMW for about three to five seconds. Nevertheless, he testified he was able to observe that the BMW had extremely dark windows. Officer Gonzalez also acknowledged that he made his determination by looking from the outside of the vehicle to the inside, and he did not know what the driver's view was from inside the vehicle. Further, he did not use an available measurement tool to verify whether the tinting was impermissible, and he had on a "handful" of occasions been mistaken about the illegality of a tint for a vehicle that he had stopped. However, he claimed that "when the windows are as dark as Mr. Collins' windows were, it's very easy to determine" the illegality.

After hearing Officer Gonzalez's testimony, the trial court found he made a lawful stop based on his determination that the windows were tinted beyond what the law allows.

*Analysis*

The police may conduct a traffic stop if the circumstances show a reasonable suspicion that the driver has violated the Vehicle Code or some other law. (*People v. Durazo* (2004) 124 Cal.App.4th 728, 734-735.) A reasonable suspicion requires a showing of specific and articulable facts that would cause a reasonable officer in a like position, drawing on the officer's training and experience, to believe a violation has

5

occurred or is about to occur. (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) Reasonable suspicion is something more than an inchoate and unparticularized suspicion or hunch, but something less than the fair probability required for probable cause. (*People v. Bennett* (1998) 17 Cal.4th 373, 387.) The courts look at the totality of the circumstances to determine whether there was a particularized and objective basis for the officer's suspicion. (*People v. Butler* (2003) 111 Cal.App.4th 150, 160.) If an officer reasonably suspected a violation of a traffic law, the stop is lawful even if later investigation dispels that suspicion. (*People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1149.)

The Vehicle Code prohibits the placement of material on a window that "obstructs or reduces the driver's clear view" through the window. (Veh. Code, § 26708, subd. (a)(2).) Further, the code states that "clear, colorless, and transparent material[,]" designed "to block the sun's harmful ultraviolet A rays[,]" may be affixed to the front side windows if the "material has a minimum visible light transmittance of 88 percent" and the "window glazing with the material applied meets [the federal] . . . specified minimum light transmittance of 70 percent . . . ." (Veh. Code, § 26708, subds. (d)(1)-(3); see also Veh. Code, § 26708.5.) With respect to traffic stops for tinted windows, the mere fact of tinting cannot alone support a reasonable suspicion; rather, there must be "additional articulable facts suggesting that the tinted glass is illegal . . . ." (*People v. Butler* (1988) 202 Cal.App.3d 602, 607; *People v. Hanes* (1997) 60 Cal.App.4th Supp. 6, 9-10.) However, the courts also recognize that when enforcing the tinted window statute, officers need not be "scientists or carry around and use burdensome equipment to measure light transmittance"; rather, "based upon their training and experience with

6

vehicles in general, [they] will be able to examine a suspect vehicle, look through the windows if possible, and form an opinion as to whether or not the tinting" violates the statute. (*People v. Niebauer* (1989) 214 Cal.App.3d 1278, 1292.)

On appeal from a ruling on a suppression motion, we defer to the trial court's express and implied factual findings that are supported by substantial evidence, and we independently determine whether, on the facts so found, the search and seizure was reasonable under the Fourth Amendment. (*People v. Durazo, supra*, 124 Cal.App.4th at p. 734.)

The record shows specific, articulable facts that support a reasonable suspicion that the BMW windows were illegally tinted. Officer Gonzalez testified the tint was "extremely dark"; he could not see inside the vehicle "at all" due to the tint; and based on his training and experience he assessed the tint allowed in only about 20 percent light and the driver would not be able to see clearly out the window. These circumstances showed more than the mere existence of tinting, and justified a stop based on a reasonable suspicion that the tint failed to comply with the clear view and light transmittance standards defined in the Vehicle Code. (*People v. Hanes, supra*, 60 Cal.App.4th Supp. at p. 10 [officer reasonably stopped vehicle for tint that "was so dark as to appear black and prevent the officer from seeing the occupants of the front seats"]; *United States v. Wallace* (9th Cir. 2000) 213 F.3d 1216, 1217, 1220-1221 [officer reasonably stopped vehicle for " 'heavy tint' " that made it difficult to view occupants inside].)

Collins asserts the circumstances did not show a reasonable suspicion because Officer Gonzalez only observed the view through the windows from the outside of the

7

BMW, and he did not know what the driver's view was from the inside of the car. The contention is unavailing because an officer observing a vehicle's windows prior to a stop will typically only have a view from the outside of the car. The reasonable suspicion standard for a traffic stop is satisfied by this outside observation, even if further investigation ultimately determines the driver's clear view was not in fact reduced.

Collins also argues that because it was dark at the time of the stop, it was not possible for Officer Gonzalez to view the interior of the car regardless of any window tinting. When cross-examined about the darkness of the night, Officer Gonzalez testified he was able to observe the dark tinted windows. The trial court was entitled to credit this testimony, and to infer that even at night Officer Gonzalez was able to ascertain that the view into the car was obstructed due to the window tinting. We defer to this factual determination.

Collins further challenges the reasonable suspicion finding because the prosecution did not present evidence of the actual measurement of the tint, nor a photograph depicting the tinted windows. This evidence was not necessary to establish Officer Gonzalez's reasonable suspicion at the time of the stop. Officer Gonzalez's testimony describing the tint and his evaluation of the tint based on his training and experience was sufficient to show the reasonableness of the traffic stop.

## II. *Erroneous Subdivision for Weight Enhancements*

For the weight enhancements on counts 1 through 4, the information, jury verdict, and sentencing decision all refer to Health and Safety Code section 11370.4, *subdivision (a)(3)*, which applies to heroin and cocaine. The correct subdivision for a weight

enhancement for methamphetamine is Health and Safety Code section 11370.4, *subdivision (b)(3)*.[1] Based on this error, Collins maintains that under due process principles the weight enhancements must be reversed.

"Due process requires that an accused be advised of the specific charges against him so he may adequately prepare his defense and not be taken by surprise by evidence offered at trial. [Citations.] This means that except for lesser included offenses, an accused cannot be convicted of an offense of which he has not been charged, regardless of whether there was evidence at his trial to show he committed the offense. . . . The same rules apply to enhancement allegations." (*People v. Haskin* (1992) 4 Cal.App.4th 1434, 1438; *Cole v. Arkansas* (1948) 333 U.S. 196, 201.) Thus, in some circumstances when a defendant is charged and convicted under a particular code section, the judgment may not be premised on another code section with different elements, even if these elements are encompassed within the jury's verdict. (*Cole, supra*, 333 U.S. at pp. 197-201; *People v. Mancebo* (2002) 27 Cal.4th 735, 738-739, 744, 752-753 [defendant could not be sentenced under uncharged multiple-victim special circumstance rather than charged gun-use special circumstance, even though it was apparent from information and jury verdict that there were multiple victims]; *Haskin, supra*, 4 Cal.App.4th at pp. 1438-1439.) This rule applies when the defendant was not put on notice that the prosecution

---

[1] To illustrate, the information stated the allegations as follows: ". . . Collins . . . did commit a felony, namely: Possess Controlled Substance for Sale . . . to wit, methamphetamine. [¶] . . . [¶] . . . [T]he substance in the above charged offense exceeded 10 kilograms by weight within the meaning of [H]ealth and Safety code section 11370.4(a)(3)." (Boldface type and capitalization omitted.)

was seeking a conviction based on the uncharged statute. (*Cole, supra*, 333 U.S. at p. 201; *Mancebo, supra*, 27 Cal.4th at pp. 745, 747, 753; *Haskin, supra*, 4 Cal.App.4th at p. 1439.)

In contrast, when a defendant is fully aware of what charges are being brought against him or her, a mere citation to the wrong code section is not fatal to the judgment. (*People v. Rivers* (1961) 188 Cal.App.2d 189, 193-195; see *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272-1275; *People v. Haskin, supra*, 4 Cal.App.4th at p. 1439.) In this circumstance, the defendant "was plainly informed of the nature of his offense, and the designation of the wrong code section is immaterial. [Citations.] The defect was merely one of artificiality rather than substance." (*Rivers, supra*, 188 Cal.App.2d at pp. 193-195 [defendant knew he was being charged with narcotics sale based on allegation in information that he " 'did unlawfully sell' " and evidence presented at trial; inadvertent citation in information (and ensuing judgment) to statute pertaining to narcotics possession caused no prejudice]; see *Russell v. United States* (1962) 369 U.S. 749, 763 [" 'This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused.' "]; *People v. Camacho, supra*, 171 Cal.App.4th at pp. 1272-1274 [reference to carjacking rather than robbery in jury verdict form was mere clerical error that is properly disregarded as surplusage].)

Here, Collins was charged and convicted only of methamphetamine-related offenses; thus, he obviously knew the prosecution was not seeking to convict him of the

10

heroin/cocaine weight enhancement. Further, in the weight enhancement allegations, the information stated the methamphetamine exceeded 10 kilograms. Thus, notwithstanding the citation to the wrong subdivision, Collins knew what facts were at issue with respect to the weight enhancement allegations.[2]

The citation to subdivision (a)(3) instead of subdivision (b)(3) of the weight enhancement statute was a clerical or technical error that created no due process notice violation. Accordingly, we modify the judgment to reflect the correct subdivision. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185-187; *People v. Escarcega* (1969) 273 Cal.App.2d 853, 858.)

III. *Failure to Stay Sentences*

For count 3 transportation of methamphetamine, the trial court sentenced Collins to a principal term of three years, plus a consecutive 10-year term for the weight enhancement and a consecutive three-year term for the prior conviction. The court imposed concurrent terms on the remaining counts; i.e., for count 1 (possession of methamphetamine for sale) and counts 2 and 4 (conspiracy to possess methamphetamine for sale and conspiracy to transport methamphetamine, respectively).

The Attorney General concedes, and we agree, that the sentences on counts 1, 2, and 4 should have been stayed under Penal Code section 654. For all four counts, defendant had the single objective of transporting the methamphetamine for sale. (See

---

[2] The weight enhancement statute for heroin/cocaine (Health & Saf. Code, § 11370.4, subd. (a)(3)) and the weight enhancement statute for methamphetamine (Health & Saf. Code, § 11370.4, subd. (b)(3)) refer to the same weight (more than 10 kilograms) and the same punishment (10 years).

*People v. Lewis* (2008) 43 Cal.4th 415, 539; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.)  We modify the judgment accordingly.

DISPOSITION

The judgment is modified to (1) change the weight enhancements to a violation of Health and Safety Code section 11370.4, subdivision (b)(3), and (2) stay the sentences on counts 1, 2 and 4.  As so modified, the judgment is affirmed.


HALLER, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.