Filed 8/19/14  P. v. Campbell CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALLEN RAY CAMPBELL,<br><br>    Defendant and Appellant. | A138408<br><br>(Sonoma County<br>Super. Ct. No. SCR618824) |

Defendant Allan Ray Campbell appeals his conviction for possession of a controlled substance, in violation of Health and Safety Code section 11378, on the grounds the trial court erroneously denied his motion to suppress evidence.  We find no error on this point.  Defendant also asserts he is entitled to two additional days of conduct credit for time spent in presentence custody.  The Attorney General agrees, as do we.  Accordingly, we modify the judgment to award defendant with two additional days of conduct credit, and otherwise affirm.

PROCEDURAL BACKGROUND

On July 11, 2012, the Sonoma County District Attorney filed a felony complaint charging defendant with possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1) and misdemeanor possession of an illegal knife (Pen. Code, § 21510, subd. (b)); count 2).  On October 15, 2012, defendant waived a preliminary hearing and the complaint was deemed an information.  On the same day, defendant filed a motion to suppress evidence seized following his arrest for possession of a knife found on his

1

person after a traffic stop, and a search incident to the arrest led to the discovery of cash, methamphetamine, and baggies.

On January 7, 2013, the trial court held a hearing on the motion to suppress evidence. The court continued the hearing on the motion and directed the parties to submit supplemental authorities and evidence. On February 4, 2013, the court heard further evidence on the motion to suppress evidence; the matter was argued and the court took the matter under submission. On February 6, 2013, the court denied defendant's motion to suppress evidence. Thereafter, on February 15, 2013, defendant pleaded no contest to the drug charge in count 1 and the court dismissed the knife charge in count 2 on the prosecutor's motion.

On April 11, 2013, the court sentenced defendant to the 16-month lower term to be served in county jail pursuant to Penal Code section 1170, subdivision (h). The court further ordered defendant to serve 12 months of the sentence in jail and to serve the remaining four months under mandatory probation supervision. The abstract of judgment accords defendant two days actual custody credits and zero local conduct credits. Defendant filed a timely notice of appeal on April 15, 2013.

## FACTS

At the suppression hearing held on January 7, 2013, City of Santa Rosa Police Officer Charles Lasala testified that on May 18, 2012, he was on patrol in a marked police car with his partner, Officer Marincik. The officers saw a white Isuzu Trooper driven by defendant go through a red light, and initiated a traffic stop. Lasala approached the driver's side of the Trooper, contacted defendant and told him the reason for the stop. Lasala noticed a knife lying on the passenger seat. The passenger side window was open and Marincik was on the passenger side of the vehicle. To ensure officer safety, Lasala motioned to Marincik to reach in, take the knife and place it on top of the vehicle, which he did.

After Marincik removed the knife, Lasala asked defendant if there were any other weapons in the car. Defendant replied he had a knife on his person. After defendant stated he had no identification that could identify him or the vehicle, Lasala asked

2

defendant to step out of the car. Defendant got out of the car and walked to the sidewalk. Lasala then performed a patdown search for purposes of officer safety. From defendant's right rear pocket Lasala pulled a black folding knife. Lasala was able to "flick it open pretty easily with the flick of the wrist." At that point, Lasala placed defendant in handcuffs. Thereafter, Lasala seized the folding knife and booked it into evidence.

Lasala retrieved the knife from evidence and brought it to the suppression hearing. At the prosecutor's request, Lasala removed the knife from the evidence envelope, identifying it as "a black folding knife wrapped in bubble wrap and slightly taped." Lasala identified the knife as the one he seized from defendant. Lasala stated he initially taped the knife shut in order to prevent it from opening accidently on anyone handling it in property evidence.

Lasala testified that on May 18, 2012, he opened the knife with a flick of the wrist. Examining the knife in court, Lasasla stated it was not equipped with any type of triggering device on the blade itself. There was no other resistance to the knife opening other than the tightness of the hinge. The knife was not equipped with any safeguards or safety features. The knife was not spring loaded. There was nothing on the knife to push or unlock in order to release the blade.

On cross-examination, Lasala acknowledged he had to flick the knife a couple of times in court before it opened, but confirmed that on May 18, 2012, "it was just a one-time [and] it flipped straight open." Lasala acknowledged the knife had a thumb stub, but admitted he was not an expert in knives and had no training in knives. Lasala stated he had received some general training in the law on knives, "just broadly what dangerous weapons are and were given examples of that." He was taught that "if [a knife] flips open with the wrist it is illegal." Lasala confirmed defendant was arrested based on his possession of the knife and that the subsequent search revealing money and methamphetamine was a search incident to the arrest.

At the conclusion of Lasala's testimony, the court stated it would be helpful to the court to have expert testimony on the characteristics of the knife. The court also stated

3

that if the knife is found to be legal, it would address the application of the good-faith exception to the warrant requirement.

The hearing resumed on February 4, 2013. Defense counsel called Dylan Cohen, owner of Sonoma Cutlery, a knife store in Petaluma. Following voir dire, the court recognized Cohen as an expert in the field of knives. Cohen testified he examined the subject knife at the Santa Rosa Police Department in the presence of defense counsel, an investigator, and a police officer. The knife is a Kershaw model number 3160, otherwise known as a Crown, a model Cohen sells in his store and that is commonly sold within the State of California. The knife has a thumb stud, a small ball on the lock bar in the middle of the knife, which applies pressure to the blade to keep it in the closed position, unless you exert a greater amount of pressure on the ball in order to open the knife. Cohen held the knife upside down and the blade did not fall out. Cohen attempted to open the knife with a flip of the wrist and the knife did not fully open. Without objection, Cohen opined the knife was legal within the State of California.

On cross-examination, Cohen stated the blade on the subject knife was greater than two inches in length. In response to the prosecutor's question whether it was possible the knife could have opened with a flick of the wrist in May 2012, Cohen responded that it depends on the strength of the person performing the flick motion. Cohen opined Penal Code[1] section 17235 excludes from the definition of "switchblade" knife any knife that has a "detent" mechanism that provides resistance that must be overcome to open the blade.

Following the conclusion of Cohen's testimony and after entertaining argument of counsel, the court stated, "So I do believe and I am factually determining that it is a legal knife." Thereafter, the court stated it would further consider the issue of the good-faith exception to the warrant requirement and rule on the matter at the hearing set for February 6, 2013.

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

At the February 6 hearing, the trial court ruled in pertinent part: "The Court ultimately at the last proceeding had ruled that the knife, in fact, was a legal knife. It did not appear to have been modified in any deliberate way to make it function as a gravity knife. It certainly was not a spring-loaded knife, like a switch blade. So I stand behind that ruling. [¶] Additionally, there was no evidence, other than the officer's testimony that the condition of the knife had changed in any way, and although he was able to open the blade by a flip of several wrist flicks, it certainly was clear that there was some resistance on the blade, it didn't fall down on its own, again it wasn't spring-loaded. . . . The bottom line was though it did flick [open, it] wasn't necessary to push on any device with the thumb to open the blade. . . . What [the officer] did testify is he immediately arrested the defendant once that knife was retrieved and he believed it was an illegal knife, and then did a thorough search and found the bottle and the money which led ultimately to the seizure, the search warrant and further seizure. . . . [¶] [D]id the officer have probable cause to arrest[?] It's been stated in different ways what probable cause means. What the Court is focusing on here is that I do believe the officer had an honest belief that the weapon was illegal based on his testimony that he flicked the knife open more easily at the scene, and certainly again there was no expert testimony or testimony otherwise what changed circumstances there may have been from the date his personal handling and testing of the knife to the reenactment or experiment that was done here in open court. But he did testify it opened with the flick of a wrist. And his training was that that was an illegal knife. . . . There is an exception. If there are a bias or safety catch, certain features of the knife that would need to be manipulated in order to open the blade. . . . Certainly again there is no evidence that this one was modified. . . . There certainly was no expert on the scene. This wasn't information conveyed to the officer. He tested it himself, and I believe he had an honest and reasonable strong suspicion at the time this pocket knife was illegal. . . . This arrest on probable cause is a lawful arrest, it was not an unlawful arrest, and as such I do find that he had probable cause to arrest what he thought was a gravity knife. This is not a mistake of law. This is a mistake of fact, which took further testimony not only of the officer but of an expert to determine any fact

5

this court determined it to be a lawful knife. But making those decisions on the street is a different factual determination and I believe this officer acted in good faith with an honest and strong suspicion that he was making a lawful arrest for an illegal knife. [¶] So I respectfully deny the motion."

## DISCUSSION

*I. Suppression Motion*

    *A. Standard of Review*

In reviewing the trial court's ruling on a motion to suppress when there is a conflict in the evidence, we defer to that court's factual findings, express or implied, if supported by substantial evidence. (*People v. Redd* (2010) 48 Cal.4th 691, 719.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*People v. James* (1977) 19 Cal.3d 99, 107.) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Redd, supra,* at p. 719; *People v. Glaser* (1995) 11 Cal.4th 354, 362.) In so doing, we apply federal constitutional standards. (See *People v. Camacho* (2000) 23 Cal.4th 824, 830 [California Constitution "forbids the courts to order the exclusion of evidence at trial as a remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution as interpreted by the United States Supreme Court"].)

Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment of the United States Constitution. (*People v. Troyer* (2011) 51 Cal.4th 599, 602; see also *Arizona v. Gant* (2009) 556 U.S. 332, 338.) Evidence seized during a search incident to a warrantless arrest constitutes " 'fruits' of a constitutional violation," and may be subject to the exclusionary rule. (*United States v. Crews* (1980) 445 U.S. 463, 470 [gathering cases].) However, "[o]ne of the specifically established exceptions to the Fourth Amendment's warrant requirement is 'a search incident to a lawful arrest.' [Citation.] This exception 'has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime

6

when a person is taken into official custody and lawfully detained. [Citation.]'
[Citation.]" (*People v. Diaz* (2011) 51 Cal.4th 84, 90.)

As relevant here, an officer can make a warrantless arrest when the officer has probable cause to believe the person to be arrested has committed a public offense in the officer's presence. (§ 836, subd. (a)(1).) " 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' [Citaion.] [¶] [P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." (*Illinois v. Gates* (1983) 462 U.S. 213, 231, 232; see also *Maryland v. Pringle* (2003) 540 U.S. 366, 371 ["The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."].) However, the high court has stated that " '[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' [citation], and that the belief of guilt must be particularized with respect to the person to be searched or seized, [citation]." (*Maryland v. Pringle, supra,* at p. 371.) In other words, "[p]robable cause exists when the facts known to the arresting officer would persuade someone of 'reasonable caution' that the person to be arrested has committed a crime. [Citation.]" (*People v. Celis* (2004) 33 Cal.4th 667, 673.)

*B. Analysis*

The dispositive issue on appeal is whether defendant's arrest by Officer Lasala for possession of an illegal knife was supported by probable cause.[2] We believe it was.

Defendant was arrested for possession of a prohibited switchblade knife, in violation of section 21510, which provides: "Every person who does any of the following with a switchblade knife having a blade two or more inches in length is guilty

---

[2] Defendant does not challenge the legality of the traffic stop or the officer's subsequent patdown search during which the officer found the knife on his person.

of a misdemeanor:[3]  [¶] . . . [¶]  [¶] (b) Carries the knife upon the person." (§ 21510, subd. (b).)  "Switchblade knife" is defined in section 17235, which provides:  "As used in this part, 'switchblade knife' means a knife having the appearance of a pocketknife and includes a spring-blade knife, snap-blade knife, gravity knife, or any other similar type knife, the blade or blades of which are two or more inches in length and which can be released automatically by a flick of a button, pressure on the handle, *flip of the wrist* or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever.  'Switchblade knife' *does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back toward its closed position.*"  (*Ibid.*, italics added.)

We stress the inquiry here is not whether the facts support a finding beyond a reasonable doubt that defendant possessed an illegal knife; rather, the inquiry is whether the facts known to the arresting officer at the scene "would persuade someone of 'reasonable caution' " that defendant was in possession of an illegal knife.  (*People v. Celis, supra,* 33 Cal.4th at p. 673.)  In other words, the fact the trial court subsequently concluded, on the basis of expert testimony, that the knife was, in fact, legal, does not preclude a finding the officer had probable cause for the arrest.  Indeed, the trial court credited the officer's testimony that when he seized the knife, he "flipped [it straight] open" with a flick of the wrist.  Officer Lasala's ability to flick the knife open with one hand provided him with probable cause to believe the knife was illegal, because section 17235 specifically provides a "switchblade knife" is a knife which can be released automatically by a flip of the wrist.

Defendant, however, insists the arrest was illegal because the court determined the knife in question did not violate the statute as it fell under the statute's exception for "a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the

---

[3] It is undisputed the knife blade in this case was two or more inches in length.

8

knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back toward its closed position." (§ 17235.) Defendant further asserts the arresting officer was ignorant of the exceptions under the statute and, thus, did not have a correct understanding of the applicable law of knives.

*U.S. v. Wallace* (2002) 213 F.3d 1216 is instructive on this point. In *U.S. v. Wallace,* an officer stopped the defendant's car on the belief that any tinting of a vehicle's front windows was a violation under the California Vehicle Code. Whereas that belief was incorrect, the tinting on the defendant's car was *darker* than allowed under California law. (*U.S. v. Wallace, supra,* at pp. 1217, 1220.) The issue before the Ninth Circuit Court of Appeals was whether the officer's misunderstanding of the law rendered the stop unlawful. On that point, the court concluded: "That [Officer] Leiber had the mistaken impression that all front-window tint is illegal is beside the point. Leiber was not taking the bar exam. The issue is not how well Leiber understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation. The undisputed facts show that he did." (*Id.* at p. 1220.) Accordingly, the court concluded the stop was lawful. (*Id.* at p. 1221.)

The same analysis applies to this case. Officer Lasala's understanding of California's knife law is irrelevant to whether he had "objective, probable cause to believe" that defendant's knife was illegal. (*U.S. v. Wallace, supra,* 213 F.3d at p. 1221.) Again, the fact that the officer was able to flip the knife open easily with a flip of the wrist provides objective, probable cause the knife was illegal. Nor does the fact the statute provides an exception negate probable cause. The exception applies to knives equipped with a "detent or other mechanism that *provides resistance that must be overcome in opening the blade*, or that biases the blade back toward its closed position." (§ 17235.) But the fact the officer was able to flip the knife open with a flick of the wrist would lead a reasonable person to believe that even if the knife had a safety mechanism it failed to provide the necessary resistance to opening the knife with a flip of the wrist. In sum, because the facts known to the officer provided "reasonable ground for [his] belief"

9

the knife was illegal, the officer had probable cause for arrest. (*Maryland v. Pringle, supra,* 540 U.S. at p. 371.)

Defendant argues to the contrary, relying on cases standing for the proposition that "a good faith *mistake of law* will not justify an unlawful search or seizure." (*People v. Tellez* (1982) 128 Cal.App.3d 876, 880, italics added.) For example, defendant cites *People v. White* (2003) 107 Cal.App.4th 636, in which a police officer stopped a vehicle with only one Arizona license plate affixed, mistakenly believing *two* plates were required under Arizona law; the traffic stop resulted in a search of the vehicle and seizure of five pounds of marijuana. (*Id.* at p. 639.) The appellate court held a police officer's good-faith mistake of law did not overcome the exclusionary rule, the purpose of which is to provide "an incentive to the police to know the law we entrust them to enforce." (*Id.* at p. 644; see also *U.S. v. Twilley* (2000) 222 F.3d 1092, 1096 [officer's mistaken belief that vehicle violated California law by displaying only one Michigan plate "cannot constitute the reasonable suspicion required for a constitutional traffic stop"]; *People v. Reyes* (2011) 196 Cal.App.4th 856, 863 [police officer's "pure mistake of law" that a single license plate on Florida vehicle was a violation of California "cannot provide objectively reasonable suspicion for a traffic stop"].)

These cases are inapposite, however, because in each case the police officer initiated a traffic stop based on an entirely erroneous understanding of the law; for example, in *People v. White,* the officer thought Arizona law required license plates in the front and rear, but Arizona law required that only one license plate needed to be affixed to the vehicle. (*People v. White, supra,* 107 Cal.App.4th at p. 639.) In other words, in these cases "the legal justification" for a traffic stop was not "objectively grounded" because it was based on an officer's "mistaken view of the law." (*U.S. v. Lopez-Soto* (2000) 205 F.3d 1101, 1105–1106 [traffic stop based on officer's mistaken belief that Baja California requires motorists to affix registration stickers in such a manner that they are visible from the rear of the vehicle violated the Fourth Amendment].) By contrast, in this case the legal justification for the arrest was objectively grounded because it was based on Officer Lasala's *correct* understanding that

10

under California law it is illegal to carry a switchblade-type knife on one's person.  And we have already concluded on the facts presented that the officer had probable cause to arrest defendant under California's anti-switchblade law.  (See *People v. Redd, supra,* 48 Cal.4th at p. 719 [appellate court exercises its independent judgment in determining whether the search or seizure was reasonable under the Fourth Amendment].)[4]

## II.  Custody Credits

Defendant contends he was denied conduct credit for the two days he served in presentence custody.  The probation report states defendant was entitled to two days custody credit, "CTS," as of April 4, 2013, and was currently released on bail bond.  At the sentencing on April 11, 2013, the court noted, "Against the 16-month [sentence there] is two days of custody credits."

As defendant notes, and the Attorney General also acknowledges, section 4019, subdivision (f) provides that "four days will be deemed to have been served for every two days spent in actual custody."  Accordingly, defendant is entitled to an additional two days conduct credit.

### DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment awarding defendant two days of local conduct credit under section 4019 in addition to the two days for actual time in local custody, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

The judgment, as modified, is affirmed.

---

[4] Because we conclude the officer had probable cause to arrest defendant for a violation of section 21510, we need not address the Attorney General's alternative argument, not presented below, that defendant's arrest did not violate the Fourth Amendment because he violated state law by running a red light and failing to produce identification upon request by the officer.  (See, e.g., *Virginia v. Moore* (2008) 553 U.S. 164, 171 [stating that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt.  The arrest is constitutionally reasonable."].)

_____
Becton, J.*

We concur:


_____
Margulies, Acting P.J.


_____
Banke, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.